IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SYBIL BURGANS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )  CIVIL ACTION NO. 2:08cv386-CSC |
| | )                  (WO) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to the United States Magistrate Judge

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Plaintiff Sybil Burgans ("Burgans") was 53 years old at the time of the hearing before the ALJ. (R. 404). She has a ninth grade education but her classes were all special education classes. (R. 90 & 405). Burgans alleges that she has been disabled

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

since November 26, 2003, (R. 24), due to headaches, pain in her back, shoulder, legs and hands. (R. 83-84). She also complains of problems with her nerves. (*Id*.) She did not allege that she was disabled due to mental retardation.

Following a hearing, the ALJ concluded that the plaintiff has severe impairments of "bulging cervical disc with radiculopathy, arthritis of the left shoulder, carpal tunnel syndrome, peripheral neuropathy, headaches, lumbar disc bulge, non-insulin dependent diabetes mellitus, obesity, status post left shoulder impingement syndrome, major depression, and borderline intellectual functioning." (R. 33). The ALJ concluded that Burgans was unable to perform her past relevant work as an egg collector/packer and sewing machine operator. (R. 40). However, relying on the testimony of a vocational expert, the ALJ concluded that jobs exist in significant numbers in the national economy that Burgans could perform, and thus, she is not disabled. (*Id*.).

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents the following issues for the Court's review.

  I.   The ALJ erred in failing to find disability under 12.05C.

  II.  The ALJ erred in failing to find Plaintiff disabled under the Medical Vocational Rules at the sedentary level.

  III. The ALJ did not meet his burden of establishing other work that could be performed.

(Pl's Br. in support of Compl., at 4, 7 & 9).

### IV. Discussion

4

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

Burgans raises issues related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). That ultimate issue inquiry is what guides the court in this case. Because the court concludes that the ALJ erred as a matter of law at step three of the sequential analysis, this case is due to be remanded for further proceedings, and the court pretermits discussion of the plaintiff's other specific arguments.

Burgans contends that the Commissioner erred in failing to find that she is disabled

under § 12.05C of the Listing of Impairments because she was diagnosed as mentally retarded, and she meets the requirements in the Listing. (Pl's Br. at 5). The Commissioner, on the other hand, argues that Burgans does not meet or equal *all* of the criteria of Listing 12.05C because she has not demonstrated that she has the requisite "deficits of adaptive functioning"or that her significantly subaverage general intellectual functioning manifested before age 22. (Mem. in Supp. of the Comm'r Dec., doc. # 13, at 6). According to the Commissioner, Burgans must demonstrate deficits in adaptive functioning in at least two areas in order to meet the Listing. The Commissioner argues that because she has only established a single deficit in adaptive functioning in the area of her academic skills,[4] Burgans does not meet the Listing. (*Id*. at 7). The court addresses each argument seriatim.

**A. Listing 12.05 - Mental Retardation**. The Listing provides, in pertinent part, that a claimant is disabled if she meets the following criteria:

> 12.05 Mental Retardation: Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

---

[4] It is undisputed that Burgans failed the first grade and then continued in special education classes until she completed the ninth grade. (R. 419-20).

*See* 20 C.F.R. Pt. 220, App. 1. Listing 12.05.

"The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings." 20 C.F.R. Pt. 220, App. 1, 12.00 MENTAL DISORDERS.

> Listing 12.05 "contains an introductory paragraph with the diagnostic description for mental retardation." 20 C.F.R. Pt. 404, Subpt. P. App. 1 at § 12.00(A). The impairment must satisfy the diagnostic description in the introductory paragraph and any one of the four sets of criteria described in section 12.05 to meet the Listing requirements. *Id*. Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22. *Id*. at 12.05. "To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

*Harris v. Commissioner of Social Security*, 2009 WL 1426754, *2 (11th Cir. 2009) (No. 08-15457). *See also Pettus v. Astrue*, 226 Fed. Appx. 946, 948 (11th Cir. 2007); *Humphries v. Barnhart*, 183 Fed. Appx. 887, 889 (11th Cir. 2006).

Consequently, a claimant meets the strictures of 12.05(C) by presenting evidence of (1) a sub-average general intellectual functioning with deficits in adaptive functioning initially manifested prior to age of twenty-two; (2) valid IQ score of 60 to 70 inclusive; and (3) evidence of an additional mental or physical impairment that has more than a "minimal effect" on the claimant's ability to perform basic work activities. *Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992); *Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985). In this Circuit, it is presumed that "mental retardation is a condition that remains constant

throughout life" and the claimant is not required to present evidence that adaptive deficits manifested before age 22.  *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001).  *See also Burt v. Barnhart*, 151 Fed. App. 817, *2 (11th Cir. 2005).

Burgans obtained a verbal IQ score of 66,  a performance IQ score of 72 and a full scale IQ score of 65.  Thus, she has the requisite IQ score below 70 to meet the first requirement of the Listing.  It is also undisputed that she suffers from several severe physical impairments that have more than a "minimal effect" on her ability to work.  In fact, the Commissioner concedes that Burgans has "a medically determinable mental impairment, namely, mental retardation, characterized as "mild," that her "IQ scores . . . fall within the requisite range," "that [she] enjoys a rebuttable presumption that her IQ score has remained fairly constant since before age 22," and "that Plaintiff has additional severe impairments that further compromise[] her capacity for work-related activities."  (Mem. in Supp. of the Comm'r Dec., doc. # 13, at 6).  Thus, Burgans meets the (C) requirement of 12.05.

The parties disagree on whether the Listing requires Burgans to demonstrate *additional deficits in adaptive functioning* in accordance with the introductory paragraph, or whether she is simply required to present evidence of a valid IQ score of 60 to 70 inclusive and evidence of an additional mental or physical impairment that has more than a "minimal effect" on the claimant's ability to perform basic work activities.  *Compare Pettus v. Astrue*, 226 Fed. Appx. 946, 948 (11th Cir. 2007) and *Humphries v. Barnhart*, 183 Fed. Appx. 887, 889 (11th Cir. 2006) with *Hodges, supra* and *Lowery, supra*.

The ALJ found that Burgans did not meet the Listing because she did not have the requisite deficits in adaptive functioning necessary to satisfy the introductory paragraph of § 12.05. Although the Eleventh Circuit has yet to address the proper construct of the introductory paragraph of Listing 21.05, the court concludes that to meet or equal Listing § 12.05, Burgans is required to demonstrate deficits in adaptive functioning as described in the introductory paragraph of the Listing. In 2000, the Social Security Administration revised its regulations for evaluating mental impairments including Listing 12.05, Mental Retardation. *See* 65 Fed.Reg. 50746. Specifically, the Administration added the introductory paragraph to the Listing to include the diagnostic description of mental retardation and the criteria for determining severity. *Id*. In an attempt to clarify the Listing, the Administration explained that "[i]f your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the Listing." 20 C.F.R. Pt. 220, App. 1, 12.00 MENTAL DISORDERS (emphasis added). Unfortunately, the Administration did not define either the diagnostic elements to be satisfied within the introductory paragraph or the standard by which to measure those elements.

However, the Listing's plain language compels a conclusion that to meet or equal Listing § 12.05, a claimant is required to demonstrate some measure of deficits in adaptive functioning. In an unpublished opinion, the Eleventh Circuit framed the determinative issue as follows.

To prevail on appeal, Pettus has to show that substantial evidence did not

9

>support the ALJ's finding that she did not have the required deficits in adaptive functioning necessary to satisfy the introductory paragraph of § 12.05. The ALJ's finding as to adaptive functioning was the reason why Pettus did not meet the Listing.

*Pettus*, 266 Fed. Appx. at 948.

Affirming the district court in *Garrett v. Astrue*, the Eleventh Circuit concluded that the plaintiff "did not have the required deficits in adaptive functioning" sufficient to meet the Listing. 244 Fed. Appx. 937, 938 (11th Cir. 2007) (No. 06-16058). *See also Harris*, 2009 WL 1426754, *2 (plaintiff "did not have the necessary deficits in adaptive functioning" to meet or equal Listing 12.05); *Battle v. Astrue*, 243 Fed. Appx. 514, 521 (11th Cir. 2007)(No. 06-16149) (plaintiff did not meet the Listing because he did not demonstrate "deficits in adaptive functioning."). Consequently, the court concludes that to meet the Listing, Burgans is required to demonstrate that she has deficits in adaptive functioning sufficient to satisfy the diagnostic description in the introductory paragraph of §12.05.

The crux of the problem before the court, however, is whether Burgans was properly informed of her burden of proof, i.e. by what method and to what extent she would be required to make that showing. By their nature, Social Security proceedings are inquisitorial, not adversarial. *See Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007). Moreover, the Commissioner is tasked with the responsibility to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" in disability cases." *See Heckler v. Campbell*, 461 U.S. 458, 466 (1983) *quoting* 42 U.S.C. § 405(a).

The ALJ relied on adaptive skill areas from the American Association on Mental Retardation manual and the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) ("DSM-IV") to determine that Burgans did not have the requisite deficits in adaptive functioning in *two areas* to be considered mentally retarded. (R. 34). While the regulations permit an ALJ to use "any of the measurement methods recognized and endorsed by the professional organizations" to satisfy the elements of Listing 12.05, Mental Retardation, *see* 67 Fed.Reg. 20018, 20022, basic due process mandates that the plaintiff be advised of the measurement methods to be utilized and her requisite burden of proof. Unquestionably, procedural due process is applicable to adjudicative administrative proceedings such as Social Security disability hearings before an ALJ. *Richarson*, 402 U.S. at 401-402. This is so because the right to a hearing necessarily implies the right to a fair hearing; in other words, "process which is a mere gesture is not due process." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). A hearing at which a person is allocated a burden of proof of which the person has no notice is not fair in any respect.

According to the ALJ, "[i]t is not established that Claimant had deficits in communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, work, leisure, health, or safety." (R. 35). However, the record is devoid of any evidence that the plaintiff had notice that the ALJ intended to require her to demonstrate deficits in adaptive functioning in *two areas* to meet the Listing. Indeed, in *Grant v. Astrue*, the Court held that the ALJ "applied an improper legal standard . . . by

11

requiring [the claimant] to demonstrate deficits in more than one area of adaptive functioning before the age of 22." 255 Fed. Appx. 374, 375 (11th Cir. 2007). Consequently, the court concludes that the ALJ erred as a matter of law by failing to notify Burgans of the measurement methodology he intended to utilize and to notify her of her burden of proof regarding the requisite deficits of adaptive functioning necessary to meet the Listing.

**B.  Manifestation of deficits in adaptive functioning prior to age 22**. The court also concludes that the ALJ erred as a matter of law in finding that Burgans's subaverage general intellectual functioning did not manifest before age 22. The ALJ determined that Burgans did not meet Listing 12.05C, in part because she "had not demonstrated that she had significantly subaverage general intellectual functioning manifested during the development period." (R. 33). The ALJ accepted Burgans's testimony that she had completed the ninth grade in special education classes, and found that she had deficits in academic skills during the developmental period. (R. 35). Consequently, his conclusion that she had not demonstrated the requisite subaverage intellectual functioning during the developmental period is contradicted by his own finding.

Moreover, because Burgans has a valid diagnosis as well as the requisite IQ score to presumptively meet the Listing for mental retardation, she is entitled to the rebuttable presumption that "mental retardation is a condition that remains constant throughout life" and she is not required to present evidence that adaptive deficits were manifested before age 22.[5]

---

[5] It is undisputed that the ALJ accepted Burgans's I.Q. scores as valid.

*See Hodges, supra*. However, the ALJ concluded that Burgans's past wage earnings from her work as an egg packer and sewing machine operator rebutted the presumption. (R. 35-36).

The mere fact that Burgans held a job is, as a matter of law, insufficient to rebut the presumption that her subaverage intellectual functioning manifested before age 22. In *Ambers v. Heckler*, the court held that since Ambers met the Listing for mental retardation, "she is entitled to benefits regardless of the fact that she may be able to hold gainful employment as she did in the past." 736 F.2d 1467, 1468 (11th Cir. 1984). *See also Powell v. Heckler*, 773 F.2d 1572, (11th Cir. 1985) (fact that claimant had worked intermittently during the period at issue is not sufficient justification to deny benefits.).

Furthermore, the ALJ's reliance on *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) is misplaced because *Popp* is distinguishable from the case at bar. In *Popp*, the claimant had an Associate's degree from a two-year college and was in his third year of college, majoring in history. His prior work experience included serving as an administrative clerk in the Army, a statistical clerk at a VA hospital and a postal clerk. Popp also taught 10th through 12th grade algebra at a private school. 779 F.2d at 1498.

Burgans's education and prior work experience are decidedly more limited than Popp's. The ALJ accepted Burgans's testimony that all of her classes were special education classes. (R. 90, 405, 419). She also testified that she can only read "a little bit," (R. 405), and she can "look over [her bills to] see how much [she] owned (sic)." (R. 119). As an egg

13

packer, Burgans "pick[ed] up eggs and walk[ed] chicken houses." (R. 406). She gathered eggs from nesting boxes and placed them in a buggy. (R. 420). As a sewing machine operator, she sewed linings into Army jackets. (R. 407). Both jobs are considered unskilled, and the ALJ found that Burgans had no transferrable skills. (R. 40).

Although the Commissioner argues that Burgans's previous work as an egg packer and a sewing machine operator is inconsistent with "allegedly disabling mental retardation," the Commissioner points to no evidence that would support this argument. Nor does the ALJ explain how, if at all, Burgans's prior work experience as either an egg packer or sewing machine operator is inconsistent with mild mental retardation. *See generally Black v. Astrue*, ___ F.Supp.2d ___, 2010 WL 63207 (N.D. Fla. 2010) (valid I.Q. scores between 60 and 70, special education classes, prior employment as a mushroom picker and reliance on family for help with complicated activities sufficient to demonstrate deficits in adaptive functioning manifested before age 22).

Taking the ALJ's reasoning to its logical conclusion, no mentally retarded person is able to do even the most basic, unskilled work including manual labor. If that reasoning is correct, then any claimant who has ever been employed would be unable to demonstrate that he or she met the Listing for mental retardation. This is simply incorrect as a matter of law. *See Ambers*, *supra*. Thus, the court concludes that the ALJ's determination that the presumption was rebutted by Burgans's past employment is not supported by substantial evidence.

Accordingly, the court concludes that the Commissioner erred as a matter of law by failing to apprise the plaintiff of the measurement methodology he intended to utilize and to notify her of her burden of proof with respect to the deficits of adaptive functioning to necessary to meet the Listing. The court further concludes that the ALJ's determination regarding the rebuttal presumption is not supported by substantial evidence. Thus, the court concludes that this case is due to be remanded so that the Commissioner may properly ascertain whether the plaintiff meets the requirements of Listing 12.05.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order will be entered.

Done this 26th day of March, 2010.

                /s/Charles S. Coody
                CHARLES S. COODY
                UNITED STATES MAGISTRATE JUDGE